UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
EDWIN OMAR RAMOS, ERNESTO RODRIGUEZ
and MICHAEL TURNER,

|  |  |
|---|---|
| Plaintiff, | Civil Action No. |
|  | **COMPLAINT** |
| POPPY'S DELI INC., 840 BRONX PARK ASSETS, INC. and RUDY GUERRINO, | **PLAINTIFFS DEMAND TRIAL BY JURY** |
| Defendants. |  |

-------------------------------------------------------------X

Plaintiffs EDWIN OMAR RAMOS ("Ramos"), ERNESTO RODRIGUEZ ("Rodriguez") and MICHAEL TURNER ("Turner") and (collectively, "Plaintiffs") by their attorneys, RAPAPORT LAW FIRM, PLLC, as and for their Complaint against Poppy's Deli Inc. ("Poppy's"), 840 Bronx Park Assets, Inc. ("840BPA") and Rudy Guerrino ("Guerrino") (collectively, "Defendants"),  allege as follows:

## PRELIMINARY STATEMENT

1.      This lawsuit seeks to recover overtime compensation and minimum wages, as required by the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law § 190, et seq. ("NYLL").

2.      Guerrino owns, operates and controls: (a) two delis, including a deli located at 420 East Sandford Blvd., Mt. Vernon, New York 10550 (the "Deli"), which conducts business under the trade name "Poppy's Deli;" and (b) an apartment building located at 840 Bronx Park South, Bronx, New York 10460 (the "Building"), which is titled in the name of 840BPA.

3.      Guerrino hires, fires, directly supervises, and determines the hours of work, rates of pay, and all other terms and conditions of employment of all employees of Poppy's

Deli and the Building.  His involvement is direct and extensive, and has included direct supervision of each plaintiff in this case.

4.     Guerrino maintains an office at the Deli where he personally manages the operations of the Deli, the Building, and other business ventures that he owns and controls.

5.     Ramos and Rodriguez are former employees of all Defendants, having worked at both the Deli and the Building; and Turner, who performs maintenance work at the Building, is a current employee of 840BPA and Guerrino.

*Ramos and Rodriguez:*

6.     Ramos and Rodriguez performed work at both the Deli and at the Building.

7.     Ramos and Rodriguez worked at the Deli as cooks/kitchen workers. Among other things, they grilled foods, operated kitchen equipment, prepared sandwiches, took counter orders from customers, organized and cleaned food preparation areas, and assembled orders.

8.     Ramos' employment at the Deli spanned the following two time periods: (a) from in or about November 2015 through in or about February 2016; and (b) from in or about April 2016 through in or about October 2018.

9.     Rodriguez worked at the Deli from approximately 2015 until on or about February 24, 2019.

10.     Ramos and Rodriguez also performed work at the Building that involved maintenance (including maintenance and operation of the Building's boiler) and communicating with tenants, for which they were paid no wages whatsoever.

11.     Rodriguez' work at the Building spanned a period of approximately two years, until in or about early 2017.  Ramos worked as superintendent of the Building from approximately early 2017 to autumn 2018.

12.     As alleged in further detail below, Ramos' and Rodriguez' unpaid labor at the Building involved spending extensive amounts of time at the Building to monitor and operate the Building's poorly-functioning and aged boiler.

*Turner:*

13.     From 2009 to the present, Turner served as the Building's porter, seven days per week.  Turner handles removal of trash and recyclables, daily sweeping and cleaning, snow shoveling, and similar tasks.  He is paid $100.00 per month and is allowed to live in a small storage shed without plumbing in the Building's basement.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to the provisions of 29 U.S.C. §§ 201 et seq., including under 29 U.S.C. §§ 207, 216, and 217.  This Court also has jurisdiction in light of the existence of a controversy arising under the laws of the United States (28 U.S.C. § 1331), and supplemental jurisdiction to consider claims arising under New York state law, pursuant to 28 U.S.C. §1367(a).

15.     Defendants operate as a unified enterprise whose operations are centrally controlled by Guerrino, and whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that Defendants' employees (including Ramos, Rodriguez and Turner), handle goods, including kitchen equipment, cleaning supplies, and other supplies, that have moved in interstate commerce.

16.     Solely by way of example, numerous items that were used and sold daily at Poppy's, such as beverages, food, dishwashing liquid, plastic cutlery, napkins, coffee stirrers, disposable cups and countless other items, were produced outside the State of New York.

17.     Venue is proper in this judicial district, pursuant to 28 U.S.C. §1391. Defendants transact business and have agents in the Southern District and are otherwise within this Court's jurisdiction for purposes of service of process. The unlawful acts alleged

herein have a direct effect on the Plaintiffs within the State of New York and within this judicial district.  Guerrino, through the entities over which he exercises ownership and control, including Poppy's and 840BPA, does business in the Southern District of New York.

18.     This Court has personal jurisdiction over Defendants pursuant to New York Civil Practice Law and Rules § 301, in that, *inter alia*, Defendants reside and/or transact business within this State, employed Ramos, Rodriguez, Turner and other personnel in the State of New York, and otherwise engaged in conduct that allows for the exercise of jurisdiction as permitted by the Constitution of the United States and the law of the State of New York, and accordingly may be served with process pursuant to Rule 4(h)(1), Fed.R.Civ.P.

19.     At all relevant times, Defendants were "covered employers" and/or an "employer" under all relevant statutes, including, *inter alia,* the Fair Labor Standards Act, and NY Labor Law.

20.     A declaratory judgment is authorized in this case by 28 U.S.C. § 2201 and Rule 57 of the Federal Rules of Civil Procedure.

## THE PARTIES

**Plaintiffs:**

### *Ramos:*

21.     Ramos is an adult, natural person who resides in Stamford, Connecticut.

22.     With respect to all causes of action, Ramos was an employee of Defendants, as defined in all laws applicable to this Complaint, including the NYLL and FLSA.

### *Turner:*

23.     Turner is an adult, natural person who resides in Bronx, New York.

24.     With respect to all causes of action, Turner was (and he continues to be) an employee of 840BPA and Guerrino, as defined in all laws applicable to this Complaint, including the NYLL and FLSA.

**Rodriguez:**

25.     Rodriguez is an adult, natural person who resides in Bronx, New York.

26.     With respect to all causes of action, Rodriguez was an employee of Defendants, as defined in the NYLL and FLSA.

**<u>Defendants:</u>**

**Poppy's:**

27.     Upon information and belief, at all times herein relevant, Poppy's is a privately held corporation organized under the laws of the State of New York with its principal place of business at 420 East Sandford Blvd., Mt. Vernon (Westchester County) New York. At all relevant times, Poppy's was a covered employer within the meaning of the FLSA and NYLL.

**840BPA:**

28.     Upon information and belief, at all times herein relevant, 840BPA is a privately held corporation organized under the laws of the State of New York with its principal place of business in Bronx County, New York. At all relevant times, 840 BPA was a covered employer within the meaning of the FLSA and NYLL.

29.     Upon information and belief, 840BPA acquired title to the Building in 1987, and since then,  840BPA has continuously owned and controlled the Building.

**Guerrino:**

30.     Guerrino is an individual engaging in business in this judicial district during the relevant time period.

5

31.    Upon information and belief, Guerrino resides in the Village of Tuckahoe, County of Westchester, and State of New York.

32.    Upon information and belief, Guerrino is the most senior officer of 840BPA and Poppy's and at all times relevant to this complaint, he exercised operational control over both 840BPA and Poppy's.

33.    Upon information and belief, Guerrino possesses or possessed operational control over Poppy's and 840BPA, and at all relevant times, he directly controlled significant functions of these entities, including direct control over hiring and terms of employment of all employees.

34.    Guerrino's direct and absolute control over the operations of Defendants is exemplified by his direct involvement in paying employees, including plaintiffs, which included activities by Guerrino that were intended to obfuscate egregious violations of overtime laws.  For example, Guerrino personally required that Ramos and Rodriguez clock in and out for only a portion of their actual work hours, which concealed the extensive amount of overtime hours that Ramos and Rodriguez worked.

35.    Guerrino exercised sufficient operational control over the corporate defendants' operations to be considered Plaintiffs' employer under the Fair Labor Standards Act ("FLSA") and New York State Labor Law ("NYLL").

36.    Defendants jointly employed Plaintiffs within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL. In the alternative, Defendants constitute a single employer of Plaintiffs within the meaning of the FLSA and NYLL.

37.    Defendants had the power to hire and fire Plaintiffs, control their terms and conditions of employment, and determine the rate and method of compensation.

## FACTS

### OMAR RAMOS:

#### *RAMOS' WORK AT THE DELI*

38.     Ramos regularly handled goods in interstate commerce, such as food and other supplied produced outside of New York.

39.     Ramos' work duties required neither discretion nor independent judgment.

40.     Ramos was employed at the Deli from in or about November 2015 through in or about February 2016 and from in or about April 2016 through in or about October 2018.

41.     From the commencement of Ramos' employment through approximately January 2018, Ramos' hourly wage was $9.00 per hour.  In or about January 2018, Guerrino increased Ramos' hourly wage to $11.00 per hour.  Ramos never received one and one-half times his regular rate of pay for the extensive number of overtime hours per week, and, as alleged below, he never received any wages for his work at the Building each evening.

42.     Ramos' work at Poppy's principally involved food and sandwich preparation, grilling, and related cooking tasks.

43.     Ramos regularly worked far in excess of 40 hours per week.  Throughout his employment until December 2017, Ramos worked at the Deli from approximately 6:00 a.m. to 3:30 p.m., six days (and, on occasion, seven days) per week, with no lunch break or rest period, for a regular weekly work schedule of approximately 57 hours.  Beginning in December 2017, Ramos' work scheduled increased, and he worked seven days per week.

44.     When Ramos arrived at the Deli in the morning, he handled breakfast food preparation, took breakfast orders from customers and prepared egg sandwiches and cold cuts.

45.     Beginning at approximately 10:00 a.m., Ramos began preparations for the Deli's two hot buffets (a self-service buffet for items that were sold by the pound, and a

second buffet that was used by personnel to serve hot items in containers). Buffet preparation entailed putting water on the steam tables and lighting them. Ramos would then bring the various buffet items that had been prepared by the Deli's chef to the buffets.

46.     Ramos greeted customers from the counter where customers placed orders. Ramos prepared hot sandwiches, quesadillas, and other grill items. He placed pre-prepared foods in containers and prepared catering orders.

47.     Approximately two to three days per week, Ramos worked until 4:00 p.m. or later. On these days, Guerrino required Ramos and other workers to clock out at 2:30 p.m. and to continue working thereafter to conceal Defendants' failure to pay overtime wages at 1.5 times the regular hourly rate of pay.

48.     Beginning in or about December 2017 through approximately early September 2018, Ramos worked seven (7) days per week.

49.     On weekends, Guerrino removed Ramos' time card and insist that Ramos and other work off-the-clock. Consequently, none of these hours appeared on Ramos' paystubs, which allowed Guerrino to conceal his practice of not paying Ramos 1.5 times his regular hourly rate for hours worked above forty per week. Therefore, paystubs that Defendants provided to Ramos only reflect a small portion of the hours that Ramos actually worked.

50.     To further avoid detection of his violations of overtime laws, Guerrino paid Ramos in cash, rather than paycheck, for overtime hours.

51.     Guerrino took illegal kickbacks from the wages of Ramos and other employees by requiring Ramos and other employees to cash their checks at the deli and retaining a portion of the amounts for himself.

52.     Poppy's has willfully disregarded and purposefully evaded recordkeeping requirements of the FLSA and NYLL and supporting regulations.

53.     Poppy's purposely disregarded and evaded the NYLL's requirement that employers furnish employees with wage statements on each payday containing the criteria required under the NYLL 195(3).  Among other things, Defendants purposely omitted the accurate number of hours worked to hide their violation of overtime requirements.

54.     A plastic cup with the bold print "TiPS Thanks" was placed on the counter. Customers would insert cash into this cup. Guerrino kept <u>all</u> of this money.

55.     Guerrino deducted $125.00 from Ramos' weekly pay as purported rent for unregistered space where Ramos resided at the Building.

### *RAMOS' WORK AT THE BUILDING (840 Bronx Park South, Bronx, NY)*

56.     At Guerrino's insistence, beginning in or about late 2016 to in or about September 2018, Ramos operated the Building's boiler on a nightly basis, salted sidewalks in the winter, and collected rents from tenants who failed to mail their monthly rent checks a timely manner.  He performed all of this work without receiving *any* wages.

57.     Operating the Building's boiler involved extensive labor and monitoring because the boiler for 840 PBS did not function on "automatic" mode.

58.     Ramos was on-call to handle tenant requests and repairs.  To facilitate this, Guerrino posted Ramos' name, title, apartment number, and mobile telephone number at the Building's entrance.  If Ramos did not answer his telephone, residents knocked on the window of the basement space where Ramos lived.

59.     Ramos was paid no compensation for his two years of work at the Building.

**ERNESTO RODRIGUEZ:**

### *RODRIGUEZ' WORK AT THE DELI*

60.     Rodriguez worked at the Deli commencing in or about 2015 until on or about February 24, 2019, and his purported pay rate was $10.00 per hour. But in actuality, as alleged in further detail below, Rodriguez' actual pay was much less than this because: (a)

Guerrino demanded that Rodriguez return his checks to Guerrino immediately after signing

in exchange for a cash payment (kickback) that was less than the amount of the check; and

(b) Guerrino deducted $150.00 per week from Rodriguez' pay, ostensibly because Rodriguez

lived in an unlawful dwelling space in the basement of the Building.

61.    Rodriguez' duties were substantially similar to the duties performed by

Ramos, as described hereinabove.

62.    On weekdays, Rodriguez worked from approximately 6:00 a.m. to

approximately 4:00 p.m., with no uninterrupted lunch breaks.  Guerrino required that

Rodriguez clock-out at 2:00 p.m. to conceal Rodriguez' overtime hours.

63.    From 2015 until in or about late summer, 2018, Rodriguez also worked ten-

hour shifts each Saturday.

64.    Guerrino's demand that Rodriguez and other employees clock-out several

hours before the end of their workdays had the purpose and effect of concealing Guerrino's

failure to pay 1.5 times their regular, hourly pay rates for hours worked above forty per week.

65.    From the commencement of his employment until approximately late summer

2018, Rodriguez also worked on Saturdays, typically beginning at 6:00 or 7:00 a.m. to 5:00

p.m., also without a regularly scheduled, uninterrupted lunch break.

66.    Guerrino's deduction of $150.00 per week from Rodriguez' pay was

egregiously unlawful, and it led to Rodriguez' wages falling far below the minimum wage

rates under state and federal law. Even worse, the basement space that Guerrino provided to

Rodriguez was not a legal dwelling unit.

### _RODRIGUEZ' WORK AT THE BUILDING (840 Bronx Park South, Bronx, NY)_

67.    Like Ramos, Rodriguez was exploitatively required by Guerrino to perform

free labor at the Building, where Rodriguez lived in the basement.  This began approximately

three months after Rodriguez began working at the Deli, to wit: in or about late 2015.

68.     Rodriguez' work at the Building mirrored the duties of Ramos.  He operated the Building's boiler on a nightly basis, salted sidewalks in the winter, and collected rents from tenants who failed to mail their monthly rent checks on time.  He performed this work without receiving *any* wages.

69.     Operating the Building's boiler involved extensive labor and monitoring because the boiler for 840 PBS did not function on "automatic" mode.

70.     In 2017, Guerrino orchestrated the removal of all of Rodriguez' belongings from Rodriguez' basement living space, without any notice, let alone a court order. This is merely one example of how Guerrino callously abused Plaintiffs and other employees.

**MICHAEL TURNER:**

71.     From 2009 to present, Turner has worked at the Building seven days per week, effectively serving as the Building's porter.

72.     Turner's work duties require neither discretion nor independent judgment.

73.     Turner's daily work duties involve taking out garbage and separating recyclables each morning, sweeping, snow removal, and related tasks.  On average, these tasks involve approximately three hours of work per day, seven days per week.

74.     Until approximately 2016, Turner was also responsible for operating/maintaining the Building's boiler, seven days per week.

75.     At all relevant times, Turner was paid a flat salary of $100.00 per month in cash.  Based on his average work schedule of three hours per day (on average, 21 hours per week), Turner's effective hourly rate of pay was approximately $1.19 per hour.

76.     Turner lives in a storage shed, without plumbing, in the Building's basement.

77.     Although Guerrino illegally rents out space in various rooms in the basement to tenants who have access to a bathroom, Guerrino specifically prohibits Turner from

11

accessing this living area to use the bathroom facility.  As a result, Turner lives in deplorable conditions, bordering on homelessness.

## AS AND FOR A FIRST CAUSE OF ACTION
### Overtime Wage Violations under the FLSA
### (On Behalf of Ramos and Rodriguez and Against All Defendants)

78.     Ramos and Rodriguez repeat and reallege all paragraphs above as though fully set forth herein.

79.     Defendants failed to pay Ramos and Rodriguez overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

80.     Defendants failure to pay Ramos and Rodriguez overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

81.     The willfulness of Guerrino's conduct is reflected by his efforts to hide his actions, which, as alleged above, included Guerrino's insistence that Ramos and Rodriguez clock out of work several hours before they actually finished their shifts and work off-the-clock on weekends; requiring employees to sign checks that they were required to immediately return to Guerrino, who kept a portion of their pay; and failing to provide accurate paystubs.

82.     Ramos and Rodriguez seek damages in the amount of their respective unpaid overtime compensation, liquidated (double) damages as provided by the FLSA, attorneys' fees and costs, and such other legal and equitable relief as this Court deems just and proper.

## AS AND FOR A SECOND CAUSE OF ACTION
### New York Labor Law – Overtime Wages
### (On Behalf of Ramos and Rodriguez and Against All Defendants)

83.     Ramos and Rodriguez reallege and incorporate by reference all allegations in all preceding paragraphs.

84.     The overtime wage provisions of Article 19 of the NYLL and its supporting regulations apply to Defendants and protect Ramos and Rodriguez.

85.     Defendants willfully failed to pay Ramos and Rodriguez for all of the hours they worked in excess of 40 hours in a workweek.

86.     Defendants willfully failed to pay Ramos and Rodriguez premium overtime at a rate of 1.5 times their regular hourly rates for hours worked in excess of 40 hours per workweek.

87.     Defendants willfully failed to keep, make, preserve, maintain, and furnish accurate records of time worked by Ramos and Rodriguez.

88.     As a result of Defendants' knowing or intentional failure to pay Ramos and Rodriguez overtime wages for hours worked in excess of 40 per workweek, Ramos and Rodriguez are entitled to compensation for unpaid overtime, liquidated damages, attorneys' fees and costs of the action, and pre-judgment and post-judgment interest.

## AS AND FOR A THIRD  CAUSE OF ACTION
### FLSA Minimum Wage Violations
### (On Behalf of Ramos, Rodriguez and Turner and Against All Defendants)

89.     Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

90.     Defendants failed to pay Ramos, Rodriguez and Turner at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a), including, *inter alia*, paying no wages for hours worked by Ramos and Rodriguez at the Building.

91.      Based on Turner's average workweek of 21 hours, and his wage of $100.00 per month, Turner was paid an effective hourly rate of approximately $1.19 per hour for his work at the Building.

92.      Defendants' failure to pay Plaintiffs at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

93.      Plaintiffs were damaged in amounts to be determined at trial.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**New York Labor Law – Minimum Wages**
**(On Behalf of Ramos, Rodriguez and Turner and Against All Defendants)**

94.      Plaintiffs repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

95.      The minimum wage provisions of the NYLL and its supporting regulations, apply to Defendants and Plaintiffs.

96.      Defendants, in violation of the NYLL, willfully paid Plaintiffs less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

97.      Plaintiffs were damaged in amounts to be determined at trial.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**VIOLATION OF THE SPREAD OF HOURS WAGE ORDER**
**OF THE NEW YORK COMMISSIONER OF LABOR**
**(On Behalf of Ramos and Rodriguez and Against All Defendants)**

98.      Plaintiffs repeat and reallege all paragraphs above as though fully set forth herein.

99.      Defendants willfully failed to pay Ramos and Rodriguez one additional hour's pay at the basic minimum wage rate before allowances for each day that Rodriguez' and Ramos' spread of hours exceeded ten (10) hours in violation of New York Lab. Law §§

190 et seq. and 650 et seq. and the wage order of the New York Commissioner of Labor codified at N.Y. COMP. CODES R. & REGS. TIT. 12, § 146-1.6.

100.        Ramos and Rodriguez were damaged in amounts to be determined at trial.

101.        Due to Defendants' willful violations of the NYLL, Ramos and Rodriguez are entitled to recover from Defendants their unpaid spread-of-hours wages, liquidated damages, attorneys' fees, costs, and pre-judgment and post-judgment interest.

## AS AND FOR A SIXTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act – Failure to Provide Wage Statements**
**(On Behalf of Ramos, Rodriguez and Turner and Against All Defendants)**

102.        Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

103.        The NYLL and Wage Theft Prevention Act ("WTPA") require employers to provide employees with an accurate wage statement each time they are paid.

104.        Defendants willfully failed to provide Plaintiffs with wage statements at the end of every pay period that correctly identified their regular hourly rates; premium overtime rates of pay, and other information as required by NYLL § 195(3).

105.        Due to Defendants' violations of the NYLL, Plaintiffs are entitled to recover from Defendants per employee liquidated damages of $250.00 per work day that the violations occurred, or continue to occur, up to $5,000.00, together with costs, reasonable attorneys' fees, pre-judgment and post-judgment interest, and injunctive and declaratory relief, pursuant to the NYLL § 198(1-d).

## AS AND FOR A SEVENTH CAUSE OF ACTION
**NYLL Wage Theft Prevention Act:  Failure to Provide Wage Notices**
**(On Behalf of Ramos, Rodriguez and Turner and Against All Defendants)**

106.        Plaintiffs repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

107.     The NYLL and WTPA, as well as the NYLL's interpretative regulations, such as but not limited to 12 N.Y.C.R.R. Part 141, require employers to provide all employees with a written notice of wage rates at the time of hire and whenever there is a change to an employee's rate of pay. Due to Defendants' violation of NYLL § 195(1), Plaintiffs are entitled to recover from Defendants liquidated damages: (a) for the time period commencing six years before the filing of this Complaint, through February 27, 2015, the sum $50 per work week, up to $2,500; and (b) from February 27, 2015 through the resolution of this case, $50.00 per work day, up to $5,000.00, together with reasonable attorneys' fees, and costs of disbursements of the action, pursuant to the NYLL § 198(1-b).

**AS AND FOR AN EIGHTH CAUSE OF ACTION**
**Illegal Kickbacks under NYLL 198-b**
**(On Behalf of Ramos and Rodriguez and Against All Defendants)**

108.     Plaintiffs Ramos and Rodriguez repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

109.     Guerrino demanded and received parts of Ramos' and Rodriguez' wages in an illegal kickback scheme in violation of 198-b of the New York Labor Law by demanding that Ramos and Rodriguez return their signed checks to Guerrino, who retained portions of their wages for himself and paid them part of their pay in cash.

**AS AND FOR AN NINTH CAUSE OF ACTION**
**Unlawful Wage Deductions – NYLL Article 6, § 193**
**(On Behalf of Ramos and Rodriguez and Against All Defendants)**

110.     Plaintiffs Ramos and Rodriguez repeat, re-allege and incorporate by reference the prior allegations of this complaint as if fully alleged herein.

111.     Defendants knowingly, willfully and intentionally violated NYLL Article 6, § 193 when Defendants took all of the tips from the tip jar on the counter of the Deli, and

insisted that Ramos and Rodriguez return their signed paychecks to Guerrino in exchange for cash payments that were below the amounts of the checks.

## RELIEF SOUGHT

WHEREFORE, the Plaintiffs, Omar Ramos, Ernesto Rodriguez and Michael Turner, respectfully request that the Court grant the following relief:

(a)    On behalf of Plaintiffs Omar Ramos and Ernesto Rodriguez, that the Court declare, adjudge and decree that Defendants violated the overtime provisions of the FLSA;

(b)    On behalf of Plaintiffs Omar Ramos and Ernesto Rodriguez, that the Court declare, adjudge and decree that Defendants violated the overtime provisions of the NYLL;

(c)    On behalf of all Plaintiffs, that the Court declare, adjudge and decree that Defendants violated the minimum wage provisions of the FLSA;

(d)    On behalf of Plaintiffs Omar Ramos and Ernesto Rodriguez, that the Court declare, adjudge and decree that Defendants violated the NYLL §§ 198-b and 193-b through unlawful deductions from wages and kickbacks;

(e)    That the Court make an award to Plaintiffs of damages and/or restitution for the amount of unpaid minimum wages, unpaid overtime compensation, including interest thereon, and statutory penalties, including liquidated damages in an amount equal to 100% of Plaintiffs' damages;

(f)    Declaring that Defendants violated the Spread of Hours Wage Order of the New York Commission of Labor;

(g)    Declaring that Defendants' violations of the New York Labor Law and Spread of Hours Wage Order were willful;

(h)    Awarding Plaintiffs damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§ 198(1-b) and (1-d);

(i)     All other orders, findings and determinations identified and sought in this Complaint;

(j)     Prejudgment and post-judgment interest on the amount of any and all economic losses, at the prevailing legal rate;

(k)     Attorneys' fees and expenses of this action, pursuant to 29 U.S.C. § 216(b) and New York Labor Law, and as otherwise provided by law; and

(l)     Such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York      **RAPAPORT LAW FIRM, PLLC**
      March 20, 2019

By:             /S/
           _____
           Marc A. Rapaport
           Attorney for Plaintiffs
             *Omar Ramos, Ernesto Rodriguez*
             *and Michael Turner*
           Rapaport Law Firm, PLLC
           One Penn Plaza, Suite 2430
           New York, New York 10119
           Phone: (212) 382-1600
           mrapaport@rapaportlaw.com